## WILL MCGLOTHLIN v. THE STATE.

### No. 4594. Decided November 7, 1917.

1.—Aggravated Assault—Insufficiency of the Evidence.

Where, upon trial of aggravated assault, the evidence was insufficient to sustain the conviction, the judgment must be reversed and the cause remanded. Prendergast, Judge, dissenting.

2.—Same—Reasonable Force—Intrusion Upon Possession.

Upon trial of aggravated assault, where there seemed to be, even from the standpoint of the State, no contention that defendant used any more force than was necessary to prevent the intrusion upon his possession of the property, the conviction could not be sustained. Prendergast, Judge, dissenting.

Appeal from the Criminal District Court No. 2 of Dallas. Tried below before the Hon. C. A. Pippen.

Appeal from a conviction of aggravated assault; penalty, a fine of fifty dollars.

The opinion states the case.

*A. S. Baskett,* for appellant.—On question of right of possession: Vann v. State, 64 S. W. Rep., 243; Lassiter v. State, 163 S. W. Rep., 710; Hinton v. State, 24 Texas, 454.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of right of possession: Wenzel v. State, 48 Texas Crim. Rep., 625.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of aggravated assault, his punishment being assessed at a fine of $50.

He is charged with having committed an assault upon a woman. Without going into specific detail of the matter, and the charges given and refused, we are of opinion the evidence is not sufficient to justify the verdict. Substantially and briefly stated, appellant and Gregory claimed ownership in four acres of land upon which a small house was situated, and it seems both claimed title from a party who until recently occupied it but had moved to Haskell County. Appellant obtained possession from the seller, who had moved to Haskell County, and had placed a Mexican as his renter in charge of the house. The Mexican was occupying it. Gregory was desirous of getting possession of the property, and undertook to put Mrs. Welch, the alleged assaulted party, and her husband in possession of the house and get the Mexican out, who was holding it under McGlothlin, or at least to take charge of

the house so as to put Gregory in possession, thus giving him an advantage in any litigation that might arise. Appellant was notified of that at his home in Fort Worth and at once came upon the scene. When he reached the place he found Welch had moved some of his personal effects into the house, and was unloading more of such effects with a view of putting those in the house. Mrs. Welch came in a hack with this load of goods, and undertook to go in the house. Appellant was standing in the door. During their interview she undertook to enter the room. He had his hands across the door, and she claims that he had his fist up and it came down and struck her on the breast. We suppose that she was undertaking to convey the idea that he intentionally struck her; however, she does not say that. If there was any assault it was committed by this act. There was an effort on her part to enter and by appellant to prevent the entry of Welch and his wife. Mrs. Welch did not succeed in entering the house. They then went around to the opposite side of the house and sat down and had a conversation, the various parties, Gregory, Welch and appellant. The occurrence at the door came up and appellant denied striking the woman, and said if he did it was unintentional; that he had no purpose to injure her or in any way hurt her. These matters resulted ultimately in litigation, which seems to be now pending, between Gregory and appellant as to the ownership of the property. Appellant, through his Mexican tenant, was in possession of the house, and Gregory was undertaking to get possession through Welch and his wife's occupancy. This was prevented by the act of appellant, and if there was any assault, or his hand or fist struck her during the melee, he says it was unintentional; but whether or not, it all came up in this way. She was trying to enter and he was preventing her as best he could, he says, without assaulting her or without any intent to injure. Under this showing we are of opinion that appellant ought not to have been convicted.

The bills of exception with reference to charges are not discussed. Appellant had the right, we think, to use reasonable force to prevent the intrusion upon his possession of the property. There seems to be, even from the standpoint of the State, no contention that he used any more force than was necessary, if he used any. That has been sufficiently stated, however.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE (dissenting).—Mrs. Lucy Welch, the woman whom appellant was convicted of committing an aggravated assault and battery upon, swore that when she attempted to go in the house appellant's fist "came down and struck me; it struck me right here (on the breast). When he did that I asked him to consider my condition. I was in the family way. The baby I have in my lap right here now." (S. of F., pp. 18-19.) She further said everything was

quiet for a few minutes and Mr. Gregory tried to reason with him. She swore that when she attempted to get in the house again that his fist "came down again. I mean that he hit me. . . . When he hit me his hand was closed." (S. of F., p. 19.)

Mr. Gregory, who was present and saw and heard it all, swore: "Mrs. Welch started in and he took his hand and hit her and shoved her back. He struck her somewhere right along here (on her breast) on the front part of her body. . . . I told him he ought to be ashamed of himself for striking a lady like he did her in the condition she was in. I don't remember that he opened his mouth. I took hold of his hand and I turned around to Mr. Welch and asked him didn't he want an officer and he said he did, and just about that time he (defendant) reached around and struck her again." (S. of F., p. 23.) Then he got in a buggy and went off after an officer.

Mr. Welch, the husband of Mrs. Welch, who was present and saw and heard it all, swore: "She told him (appellant) that her things were there, told him that was her home and started in, and Mr. Mc-Glothlin knocked her back with his hand, and she started in the second time and he also knocked her back." (S. of F., p. 28.) On cross-examination he swore: "I saw Mr. McGlothlin strike my wife. I was about eight feet from her at that time. . . . He struck her in the breast. It was hard enough to stagger her back. She staggered back something like a step. It was just a short time, not over a quarter of a minute or something like that, after he struck her the first time until he struck her again. She started in the second time and he knocked her back." Mr. Welch further testified that he did not resent this beating of his wife by appellant because he was a law-abiding man, and sent for an officer. (S. of F., p. 30.)

Appellant himself swore on cross-examination that when Mrs. Welch came up to the door to come in he was standing there and had hold of the screen door with his left hand. "At the time she came up to me, I am not positive whether I had one or two hands on the door. She was insisting on getting in. She said she wanted to get in the house. I wasn't going to let her get in, I was determined she was going to stay out no matter what force I took. I was going to keep her out. I did keep her out." (S. of F., p. 37.)

It is thus seen that three witnesses swore positively and unequivocally that appellant beat Mrs. Welch up with his fist. That he struck her in the breast with his fist two separate and district licks, swearing, *"I was determined she was going to stay out no matter what force I took."* He had no right to thus beat her up. That the evidence clearly justified his conviction there can be no particle of doubt.

Twelve fair and impartial jurors heard all this testimony and saw the witnesses and heard them when they testified. Upon their oaths they found that appellant had struck and beat her up as she and the other two witnesses swore and that in doing so he violated the law.

An able, fair and impartial judge who also saw and heard all these witnesses, and heard this testimony, so held.

The statute is clear and plain that the *"jury are the exclusive judges of the facts in every criminal cause"* (C. C. P., art. 734), and *"The jury in all cases are the exclusive judges of the facts proved and of the weight to be given to the testimony."* (C. C. P., art. 786.) That statute is just as binding on the judges of this court as any other plain and clear statutory law can be. The judges of this court can not be as competent to determine the facts, not hearing or seeing the witnesses, as the jury and judge of the lower court can be. The law says the *jury* are the exclusive judges of the facts and of the weight to be given to the testimony. But two judges of this court, in effect, by their decision herein, say that the jury is not the exclusive judges of the facts, nor is the jury the exclusive judges of the weight to be given to the testimony; but that they, the judges, and not the jury, are the exclusive judges of the facts and the credibility of the witnesses.

The court gave a correct and full charge submitting every issue raised by the testimony in this case.

There was no Mexican in the house nor anywhere near the premises at the time appellant beat up this woman. After appellant beat her up, she and her husband went around to some outhouses to protect themselves against the cold weather. It was very cold at the time. Appellant refused to let her in the house, where Mr. Gregory had built a fire for her. As soon as Mr. Gregory went off after an officer appellant had all of her household and kitchen goods moved out of the house and off of the premises. He also moved off of the premises the vehicles in which a part of her goods were held and in which she rode at the time she went to the house, and put up the fence. Then he went around to where Mr. and Mrs. Welch were sheltering themselves and attempted to show them a deed he claimed he had to this property. Gregory was not there at the time, but off after an officer, and while he did not again beat her up there, she swore: "I told him right then that he hit me twice. He said if he did, he didn't know it." (S. of F., p. 21.) He swore: "At the time I understood her to say I had hurt her. I told her if I did I didn't intend to. I am not positive whether she said I struck her or not. I understood her to say that I hurt her." (S. of F., p. 37.)

Undoubtedly this case should have been affirmed and not reversed.